**BEAVER et al. v. WILSON et al.**

No. 16309—Opinion Filed March 23, 1926.

**1. States—Limitation of Actions—Schedule of Constitution—Adverse Possession Under Arkansas Statute.**

Under section 1 of the Schedule of the Constitution of Oklahoma, providing, inter alia, that no existing rights or contracts shall be affected by the coming of statehood, the seven-years statute of limitations of Arkansas is applicable where the alleged adverse possession began in 1902.

**2. Appeal and Error — Affirmance — Correct Judgment Based on Wrong Reason.**

Though a wrong reason may be given for a judgment, yet if such judgment be correct under the law and facts, it will not be reversed.

**3. Tenancy in Common—Limitation of Action Between Cotenants — Adverse Possession—Commencement.**

The statute of limitations does not begin to run in favor of one cotenant of land in possession, against another cotenant thereof, until actual ouster by the former, or some other act or acts on his part amounting to a total denial of the rights of the latter, and until notice or knowledge of the act or acts relied on as an ouster is brought home to him.

**4. Same—Ouster—Notice or Knowledge — What Constitutes.**

The notice or knowledge required must be either actual or act or acts relied on as an ouster must be of such an open and notorious character as to be notice of themselves, or reasonably sufficient to put the disseized cotenant on inquiry, which, if diligently pursued, will lead to notice or knowledge of the fact.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Okfuskee County; John L. Norman, Judge.

Action by Ernest Beaver et al. against C. W. Wilson et al. From a judgment for certain defendants, the plaintiffs and certain other defendants appeal. Affirmed.

J. C. Wright, John W. Overstreet, and Cheatham & Beaver, for plaintiffs in error.

E. T. Noble and S. L. O'Bannon, for defendants in error.

Opinion by ESTES, C. Earnest, Robert, and Rufus Beaver, minors, by their guardian, commenced this action on July 28, 1923, to quiet title and recover possession of interests in certain lands. They will be referred to as plaintiffs. C. W. Wilson. W. P. Brown, John L. Townsend, D. M. Smith, and J. S Todd were defendants, and will be thus referred to. Joseph Charles Beaver, Alice May Overstreet. and E. L. Cox will be referred to as the other defendants. There were also other defendants not necessary to be mentioned.

Daniel Grayson, a five-eighths Creek Indian, died intestate in 1900. Said defendants claim that Joe Grayson, his brother, was his sole heir. Plaintiffs and said other defendants claim that one Ella Donaldson, or Ella Grayson, was his wife at the time of his decease, and that therefore she and said Joe succeeded equally to his estate. After the death of said Daniel, said Ella married one John Beaver, plaintiffs and said other defendant Joseph Charles Beaver being the only issue of said marriage. In 1905, said Ella executed and delivered to said other defendants. Alice May Overstreet and E. L. Cox, a quitclaim deed to a one-fourth interest in the lands in controversy. She died in 1912. survived by her husband, John Beaver, and three plaintiffs and the defendant Joseph Charles Beaver. It was conceded that said defendants held a one-half interest in the land by conveyance from said Joe Grayson, the brother of said Daniel. John Beaver died in 1917, leaving said Beaver children as his sole

heirs, by which it is claimed they succeeded to the said one-fourth interest in the allotment of Daniel Grayson held so as aforesaid by their said mother, Ella. In 1902, said Joe Grayson obtained the allotment of the lands in controversy to the heirs of Daniel Grayson, he claiming to be the sole heir. The land is rough, rocky, and suitable only for grazing purposes. Joe Grayson assumed immediate control over the land and leased same to one Burnett for three years, who, in turn, sold the lease to one of the defendants, Wilson. In 1905, said Joe Grayson executed to said Wilson a written lease for five years on the entire property, and the same was duly filed for record. In 1906, he executed, and there was duly filed for record, a warranty deed to the entire tract to Finch and Gill, in which he recited that he was the owner and warranted the title against the claims of all persons. In the same year he, joined by others who are not claimed by any one to have been heirs of said Daniel, executed another deed of the same import to the same parties. In 1907, he executed another deed to the same parties. In 1908, he executed still another deed to the same and other parties, evidently on the theory that, under the Act of Congress, his deeds of 1906 were invalid. The last said deed was duly approved by the county court. In 1912, his grantees in said deeds conveyed by warranty deed to said main defendants, Wilson and others, the entire tract, which deed was duly recorded. About the time that Joe leased said land in 1902 to Burnett and the latter assigned his rights to defendant Wilson, the said Wilson constructed a pasture fence around a considerable tract of land within which was the land in controversy and has used same for pasture continuously to date. All rents from the beginning were paid to said Joe. He and his grantees have at all times paid the taxes and exercised complete and undisputed control and possession of the land until 1923, when this action was filed by plaintiffs. Neither plaintiffs nor said other defendants at any time, until the filing of this action, claimed any of the rents, issues, profits, or any title or interest in this land, for more than 21 years from the date when Joe, in 1902, first took entire possession thereof. Plaintiffs and their guardian and said other defendants resided in adjoining neighborhood to the land, as nearly as the record discloses.

1. The rights of said defendants and their grantor, Joe Grayson, accrued under the seven-year statute of limitations of Arkansas, then in force. Under section one of the schedule of the Constitution of Oklahoma, provid-

ing, inter alia, that no existing rights or contracts shall be affected by the coming of statehood, the seven-year statute of limitations of Arkansas is applicable—and not the 15 year statute of Oklahoma. Williams et al. v. Pearce, 98 Okla. 206, 225 Pac. 373; International Land Co. et al. v. Smith, 103 Okla. 101, 229 Pac. 601. However, if adverse possession obtains against plaintiffs and said other defendants, more than the 15 years of the Oklahoma statute expired between 1902 and the bringing of this action in 1923.

2. From statements made by the trial judge—not appearing as findings in the journal entry—the judgment for defendants was based on the theory that said Ella had never been married to the allottee, Daniel Grayson, and was not his wife at the time of his death, and therefore plaintiffs and said other defendants, as her heirs and grantees, did not succeed to any interest in such one-half of the allotment. Much testimony was heard pro and con on such issues. The general finding and judgment was for defendants, and there inheres therein the necessary findings to sustain the same. We do not deem it necessary to determine whether the judgment is sustainable on such theory of the invalidity of such marriage. Assuming, without deciding, that there had been a valid marriage between said Ella and said Daniel, the judgment for defendants is correct on other grounds. It is held in Bath v. Dumas, etc., 108 Okla. 260, 236 Pac. 1:

"Though a wrong reason may be given for a judgment, yet if such judgment be correct under the law and facts in the case, it will not be reversed."

3, 4. If there had been such valid marriage and said Joe Grayson and Ella were the equal and only heirs of said Daniel, said other defendants, Overstreet and Cox, grantees of said Ella of a one-fourth interest in the land, and the plaintiffs and said other defendant, Joseph Charles Beaver, became tenants in common with said Joe Grayson, the admitted heir to the other half of the land, and with his grantees, the defendants. The question then recurs, is the action against said defendants, Wilson et al., as grantees of said Joe Grayson, barred by limitation notwithstanding such cotenancy? It may be stated, generally, that the statute of limitations operates upon causes of action between cotenants to the same extent as between persons not within the relation of cotenants. The difficulty arises in determining when the statute begins to run. In regard to the possession of the subject of cotenancy, there is a presumption that the cotenant is merely exercising the right which the law

gives him—that he is acting as the agent and trustee of his cotenants, his possession being for all—and this presumption must in some way be overcome before the possession becomes adverse and the statute of limitations set in motion. Armijo et al. v. Neher (N. Mex.) 72 Pac. 12. As applied to cotenants, limitations do not begin to run in favor of one against another until actual ouster or some other act or acts amounting to a total denial of the right, and until notice or knowledge of the act or acts relied on as an ouster is brought home to the party dispossessed. The notice or knowledge required must be either actual, or the act or acts relied on as an ouster must be of such an open and notorious character as to be notice of themselves, or reasonably sufficient to put the disseized cotenant on inquiry which, if diligently pursued, will lead to notice or knowledge in fact. Clark v. Beard (W. Va.) 53 S. E. 597. An ouster of one cotenant by another is produced by acts of the same character as will produce any other ouster. Winterburn v. Chambers (Cal.) 27 Pac. 658. In the instant case, the acts of ownership by Joe Grayson and his grantees, in possession at all times from 1902 to 1923, were very unequivocal. Under some authorities, the recording of the lease from Joe in 1905, and the recording of the various deeds, in all of which he conveyed the entire estate, while not an actual ouster in the sense that notice was brought home to the cotenants of the adverse holding of Joe Grayson, constituted what may be called "constructive ouster". We do not so hold that these recorded instruments, of themselves, constitute ouster. They are at least impelling circumstances, which, together with the fencing of the land, the collection of rents and the other acts of absolute and undisputed possession of and dominion over the land by Joe Grayson and his grantees for more than 21 years, were ample as a predicate for a finding of ouster by the court. Plaintiffs and the other defendants must be held to have been placed upon notice by such indubitable repudiation of the cotenancy. In Hutson et al. v. Hutson et al. (Mo.) 40 S. W. 886, the court held that a holding by a cotenant for 20 years, under facts quite similar to those of the instant case, constituted adverse possession. In Dobbins v. Dobbins (N. C.) 53 S. E. 870, 115 Am. St. Rep. 682, 8 Ann. Cas. 361, 10 L. R. A. (N. S.) 185, it is held that in ejectment by one cotenant in common against a cotenant who has been in undisputed possession and use of the land for 20 years, an actual ouster on his part, when the possession was first taken, will be presumed. In Beall v. McMenemy (Neb.) 88 N. W. 134, 93 Am. St. Rep. 427, it is held that a sale of land by one cotenant while in sole possession, followed by the exclusive possession of his grantee for 14 years, constitutes an ouster of the other cotenant, and completes the bar of the statute of limitations against him. In 38 Cyc 37, with reference to tenants in common, it is said that notice of adverse holding need not be actual, direct, formal, verbal, or written notice; it may be inferred where the possession is of such a hostile and unequivocal character and is so openly manifest that a man of ordinary diligence would discover it, citing authorities.

Let the judgment be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 2 C. J. p. 117 § 192. (2) 4 C. J. p. 663 § 2557. (3) 38 Cyc. pp. 24, 27. (4) 38 Cyc. pp. 27, 37. See under (3, 4) anno. 10 L. R. A. (N. S.) 185; 32 L. R. A. (N S.) 704; 7 R. C. L. p. 850; 2 R. C. L. Supp. p. 466.